Sandra **GREATHOUSE**, Personal Representative of the Estate of Donald L. Greathouse, Deceased, Appellant–Plaintiff,

v.

Stanley **ARMSTRONG**, Lawrence County Sheriff's Office and Commissioners of Lawrence County, Indiana, Appellees–Defendants.

No. 88A01–9112–CV–388.

Court of Appeals of Indiana,
First District.

Oct. 28, 1992.

Rehearing Denied Dec. 21, 1992.

Patrick W. Harrison, Beck & Harrison, Columbus, Robert G. Hamilton, II, Salem, for appellant-plaintiff.

James S. Stephenson, Richelle V. Cohen, Stephenson and Kurnik, Indianapolis, William H. Andrews, Ronald L. Chapman, Karen A. Wyle, Cotner, Andrews, Mann & Chapman, Bloomington, for appellees-defendants.

ROBERTSON, Judge.

In this wrongful death suit, Sandra Greathouse appeals from summary judgment granted in favor of the Lawrence County Sheriff's Office and the Commissioners of Lawrence County, Indiana (Lawrence County). She also appeals from a verdict and judgment in favor of Stanley Armstrong, the owner of a black angus bull which left its pasture and wandered onto a road where the decedent collided with it one dark and foggy morning and was killed. With respect to the summary judgment for Lawrence County, Greathouse asks:

I. Was there a duty owed to the decedent, Donald Greathouse, by the Lawrence County Appellees so that the Trial Court was in error in granting a summary judgment where it concluded that there was no special duty or relationship between the decedent and this appellee?

With respect to the verdict and judgment for Armstrong, she asks:

II. Did the Trial Court err in excluding evidence of Donald Buck because of remoteness when that evidence was that Appellee, Stanley Armstrong, had cattle

out of his fences and along the highway in the years 1982 and 1983 and that Appellee was present on at least one of these times?

III. Did the Trial Court err in refusing Appellant's final instruction numbers:

A. 5, which could have held Appellee, Stanley Armstrong, strictly liable under the facts of the case;

B. 6, which stated Appellee, Stanley Armstrong's, duty to use due care in choosing a field and to foresee what cattle are apt to do;

C. 7, which could have made Appellee, Stanley Armstrong's, conduct under the facts of this case negligent;

D. 8, which could have made Appellee, Stanley Armstrong's, conduct under the facts of this case negligence per se as violative of statute?

IV. Did the Trial Court err in giving, over Appellant's objections, Appellee, Stanley Armstrong's, tendered final instructions number 1 (negligence with respect to foreseeability) and 2 (negligence with respect to the containment of domestic animals)?

V. Did the Trial Court err in allowing Appellee to cross-examine Appellant's economist and, later, Appellant, on pension options that would have been available to the decedent and the Appellant when decedent retired because the decedent and Appellant had, at retirement, chosen another option and had been locked into that option which was in effect at the date of death?

The evidence reveals that some of Armstrong's cattle escaped from his pasture and wandered onto State Road 58, where the decedent died after he had struck one black angus bull while driving his motorcycle. About two hours before the collision, the Lawrence County Sheriff's Office had been informed that some cattle were on the road near the Auston Powder Plant. The office had an informal policy: when it received such information and was not too busy, one of the officers could consult a list of cattle owners in the area or go to the area itself to determine who owned the cattle. The dispatcher called some of the owners on the list but did not ask other officers whether they knew who might be the owner and did not send another officer to the area to determine who might be the owner. At best for Greathouse, the evidence shows that the dispatcher called the wrong Armstrong and should have called owners on State Road 54 west of Avoca and not west of Springville. The dispatcher finally called the correct Armstrong just when the 911 call was made about the collision.

I.

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. We are bound by the same standard as the trial court, to consider all the designated material, the pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony, in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. Ind.Trial Rule 56(C); *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229.

The parties argue this appeal under Tort Claims Against Governmental Entities and Public Employees, Indiana's Tort Claims Act, which states that a governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the performance of a discretionary function. Ind.Code 34-4-16.5-3(6). Essentially, Lawrence County is immune from liability if the acts here were discretionary but not immune from liability if the acts were not discretionary.

The policy underlying governmental immunity is the fundamental idea that certain kinds of executive branch decisions should not be subject to judicial review. *Peavler v. Monroe Cty. Bd. of Com'rs* (1988), Ind., 528 N.E.2d 40, 44. Governmental immunity for discretionary functions avoids inhibiting the effective and efficient performance of governmental duties. Policy-making activities lie at the

heart of governance and such essential acts should not be subject to judicial second-guessing or harassment by the actual or potential threat of liability litigation. *Id.*

■ Immunity for discretionary functions, however, does not protect all mistakes of judgment. The discretionary function exception insulates only those significant policy and political decisions which cannot be assessed by customary tort standards. *Id.* at 45. The test is the distinction between planning and operational standards. The critical inquiry is not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations. *Id.* Government decisions about policy formation which involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are planning activities. *Id.*

■ The nature of the judgment here required policy considerations. The evidence most favorable to Greathouse shows that the Sheriff's office had a policy, handed down over the years from sheriff to sheriff, to attempt to call the owner of the cattle which were loose because it did not have the manpower to send an officer out on every call. If the owner could not be found or if the office were to receive another call on the matter, "then we would try to probably send an officer out on it if [sic] have one available" (R.130). A former dispatcher acknowledged that if an officer was close and not otherwise occupied with something that had a higher priority, then he would have sent the officer to the scene to check on it (R.174).

The decisions about when enough time has elapsed in attempts to contact the owner, so that an officer could be sent to the scene if available, and about whether the cattle call or some other matter has priority under the circumstances, involve assessments of competing priorities and scarce resources of the Sheriff's office. As such, they are planning activities. They involve policy decisions, a conscious balance of risks and benefits at the moment they are made, which are not reviewable under traditional tort standards of reasonableness.

The Sheriff's office is immune from liability for them even if the act was performed negligently. *See Peavler*, 528 N.E.2d at 45.

■ Greathouse nevertheless claims the Sheriff's office, through its dispatcher, gratuitously undertook a duty for the decedent's protection. This appears to be an argument that the Sheriff's office owed a special or private duty to the decedent apart from its duty to the public in general. She cites the Restatement (Second) of Torts Sec. 324A (1965):

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Baker v. Midland–Ross Corp.* (1987), Ind. App., 508 N.E.2d 32, 34–35 n. 1.

Contrary to Greathouse's argument, the evidence most favorable to her position shows that the Sheriff's office attempted to identify the owner of the cattle and inform the owner about the escape. The Sheriff's office did not assume "the duty of Stanley Armstrong to remove his cattle from the roadway." The attempt to contact and inform the owner cannot be said to have increased the risk of harm to the decedent; and with such attempt the Sheriff's office cannot be said to have undertaken a duty owed by the owner to the decedent. Further, the Sheriff's office did not contact the owner and the decedent did not know of the attempt to do so; therefore, neither the owner nor the decedent can be said to have relied upon the undertaking. The trial court committed no error when it granted summary judgment to Lawrence County.

## II.

█ Greathouse produced a witness to testify that he saw cattle out of the fence "in the particular area" in 1982 and 1983 and that he saw Armstrong round up the cows to bring them back to the fence. The trial court essentially ruled that the 1982 and 1983 events were too remote to be admitted with respect to the 1987 collision. Greathouse claims this evidence would have shown that the fence had been bad for years and that Armstrong knew or should have known the cattle could easily escape from the field as had occurred in the past. Greathouse contends this evidence would have discredited Armstrong, who claimed that the fence was good and that the cattle seldom escaped.

█ The escape of the cattle in 1982 and 1983 was, in essence, sought as the admission of evidence of other similar occurrences under substantially the same circumstances. The admission of such evidence, to prove the existence of a dangerous condition and notice thereof, is a matter left to the discretion of the trial court. *See Pedersen v. White–Evans Elevator Co.* (1987), Ind.App., 511 N.E.2d 460, 465. Remoteness and confusion are recognized grounds on which to exclude evidence of a prior occurrence. *Id.* Armstrong produced evidence which showed that he had replaced the fence in the area in 1984. Aside from remoteness in time, the trial court could have properly concluded that this intervening event sufficiently distinguished the prior occurrence from the 1987 occurrences, such that they were remote from circumstances which were substantially similar.

█ Moreover, in order for this court to reverse the trial court, the record must demonstrate not only an erroneous ruling but also resulting prejudice. *P.S. by Harbin v. W.S.* (1983), Ind., 452 N.E.2d 969, 976. The evidence reveals that Armstrong had the fence "in the particular area" replaced in 1984. Also, two bulls, including the one involved in the collision, broke through the fence in May of 1987. Armstrong returned the cattle to the pasture and repaired the fence. Further, the trial court received testimony which showed that cattle will attempt to escape confinement and that other cattle had previously done so in the area. This evidence substantially served the purposes for which Greathouse sought to introduce the 1982 and 1983 occurrences. She therefore has not shown she was prejudiced by the exclusion of that evidence.

## III.

█ For the refusal of a tendered instruction to constitute reversible error, the complainant must show that the instruction correctly states the law, that the instruction is supported by the evidence, that the substance of the instruction is not covered by other instructions given, and that a reasonable probability exists that her substantial rights have been adversely affected. *See Sullivan v. Fairmont Homes, Inc.* (1989), Ind.App., 543 N.E.2d 1130, 1140.

### A.

█ Greathouse tendered her final instruction number 5, the refusal of which she claims is reversible error:

The keeper or owner of an animal in the State of Indiana that has done an act in the past which might endanger the safety of another person is liable for the injuries to any person who is injured by the animal irrespective of negligence or fault by the owner in taking care of the animal. In this case if you find that the bull of the defendant has in the past done any act, including escaping the confines of the field and such act might endanger the safety of another person then you would be justified in finding that the defendant is responsible for the death of Donald Greathouse.

Greathouse contends that no other instruction covers the "strict liability theory tendered in plaintiff's final instruction number 5."

█ It is well-settled in this State that cattle are not naturally ferocious or dangerous animals and that an owner is not strictly liable for injuries caused by the animal unless the owner had knowledge of

a vicious propensity of a particular animal. *Thompson v. Lee* (1980), Ind.App., 402 N.E.2d 1309, 1311. A vicious propensity is a propensity or tendency of an animal to do any act which might endanger the safety of a person or property in a given situation. *See Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688.

Greathouse claims the evidence that the bull here had previously gone through the fence establishes a "vicious propensity" which tended to endanger the safety of persons in positions similar to and including that of the decedent. The evidence, however, shows no more than that the bull left the confines of the fenced pasture and wandered onto the road. In other words, Greathouse has shown no propensity other than that which is normal for cattle, including bulls. The evidence does not show a vicious propensity to endanger but a normal propensity to roam, and Greathouse has not shown the bull was abnormal to this class of bulls in general. *Cf. Hardin v. Christy* (1984), Ind.App., 462 N.E.2d 256, *trans. denied* (court agreed that stallion's conduct was not abnormal within the context of strict liability under Section 509 of the Restatement (Second) of Torts, Comment (e)). The trial court therefore committed no error when it refused this instruction because the instruction was not supported by the evidence.

### B. & C.

Greathouse also claims the trial court committed reversible error when it refused her tendered instruction number 6:

In this case if the plaintiff proves that the defendant failed to use reasonable care in his choice of the fields in which he allowed his cattle to graze because he could reasonably foresee that his animal could escape from that field or that he failed to use reasonable care in the manner in which he confined his cattle and he could have reasonably foreseen that the cattle were apt to escape, and they did escape then the defendant would have been negligent and you would be justified in finding that the plaintiff would be entitled to recover.

and when it refused her tendered instruction number 7:

The owner or keeper of a domestic animal is bound to take notice of the general tendencies of the class to which the animal belongs. Insofar as any tendency of the animal is of a nature likely to cause injury, the owner must exercise reasonable care to guard against injury and to guard against such tendencies and to prevent injuries which are reasonably to be anticipated from such tendencies.

In this case if you find that the defendant owned and kept cattle on his property, then he was bound to take notice of the general tendencies of the cattle which include but are not limited to their tendency when spooked or to try to escape their confines for better grass and if such tendency was one which would likely allow the animals to escape their confines, then Stanley Armstrong had an obligation to use reasonable care to guard against his cattle escaping so as to prevent injuries to persons using the highway.

If you further find that the defendant, Stanley Armstrong, did not use reasonable care in guarding against the escape of the cattle, then you would be justified in finding that such failure to use reasonable care could be negligence and entitle the plaintiff to recover.

The trial court instructed the jury generally about negligence, reasonable care, and foreseeability. The trial court also gave an instruction which related specific facts of the case. These instructions adequately covered the subject matter of Greathouse's proposed instructions. Although the trial court's instructions may have been less elaborate on the specific facts of the case, they adequately covered the same legal principal. The trial court did not err when it refused the instructions. *See Consolidated Rail Corp. v. Thomas* (1984), Ind. App., 463 N.E.2d 315.

### D.

Greathouse claims the trial court committed reversible error when it refused her tendered instruction number 8:

At the time when Donald Greathouse was killed there was in full force and effect in the State of Indiana a statute which stated, "A person responsible for a domestic animal who recklessly permits the animal to run at large commits a Class B misdemeanor."

The term "recklessly" is defined as follows: conduct that is reckless if a person engages in conduct in plain, conscious and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

The term "permit" requires that a person from the circumstances which he knows foresee and anticipate that his animals would run at large. If you find that the defendant violated this statute, such conduct would be negligence on the part of the defendant.

The instruction addresses reckless conduct and apparently relies upon Ind.Code 15–2.1–21–8, which formerly stated:

> Running at Large. A person responsible for a domestic animal who *recklessly* permits the animal to run at large commits a Class B misdemeanor.

(Emphasis supplied.) That statute has been amended, however, and at the time of the collision, stated:

> A person responsible for livestock or poultry who *knowingly or intentionally* permits the animal to run at large commits a Class B misdemeanor.

(Emphasis supplied.) We need not decide whether the instruction was otherwise proper because it did not accurately state the law at the time of the collision. Further, the trial court had no duty to modify the defective instruction. *See Cua v. Ramos* (1982), Ind., 433 N.E.2d 745.

### IV.

Greathouse claims the trial court erroneously gave Armstrong's proposed instruction number 1:

> To determine whether an alleged act or omission was negligent, your answer must depend, in part, upon whether or not this class of injury could have been reasonably expected to result from such

act or omission. Reasonable care requires a person to anticipate and guard against what usually happens or is likely to happen, and a failure to do this may be negligence; but reasonable care does not require one to foresee and guard against that which is not usual and not likely to occur, and a failure to do this is not negligence.

Greathouse's argument with respect to the instruction is more of a closing argument to the jury than a legal argument to the Court. She claims that, under the facts of the case, Armstrong should have foreseen and reasonably expected what occurred. Such an argument does not show, for example, that the instruction does not correctly state the law, that the instruction is not supported by the evidence, that the substance of the instruction is covered by other instructions given, or that a reasonable probability exists that her substantial rights have been adversely affected. Under the circumstances, we find no reversible error.

Greathouse further claims the instruction does not except her contentions about strict liability or the violations of statute from its applications. Inasmuch as we have concluded that her issues of strict liability and negligence per se do not apply in this case, the instruction need not have excepted them from its application.

■■ Greathouse also claims the trial court erroneously gave Armstrong's instruction number 2, as modified:

> Before you can find Stanley Armstrong negligent because his animals were out of their pasture, you must find either that he did not exercise that care in containing them that a reasonable person in similar circumstances would have exercised, or that he had personal and actual knowledge or should have known, prior to the accident, that the animals were loose and, even though he had this knowledge, made no reasonable effort to recapture them. The fact that the animals were loose is not sufficient cause or basis, by itself, to support a finding of negligence. It is well established that animals are prone to escape confinement

despite even the best efforts to keep them contained.

Indiana does not allow the doctrine of *res ipsa loquitur* to be applied to supply an inference of negligence in instances where domestic animals escape from their enclosures. *See Taylor Bros., Inc. v. Sork* (1976), 169 Ind.App. 279, 348 N.E.2d 42, *trans. denied.* That case quoted the following with approval:

> ... the escape of animals from a lot or other enclosure is not such a departure from the ordinary course of events as to raise any inference or presumption of negligence. We all know from common experience that animals quite often jump fences or break through them without there being any suggestion of negligence on the part of their owners or keepers ...

*Id.* at 283, 348 N.E.2d at 46 (quoting *Poole v. Gillison* (E.D.Ark.1953), 15 F.R.D. 194).

Indiana common law places a duty upon the owner of an animal to confine it; however, escape by the animal is not negligence per se on the part of the owner. *Cochran v. Phillips* (1991), Ind. App., 573 N.E.2d 472, 474. The injured party must establish one of two propositions in order to prevail:

1. the animal owner was negligent in his choice of the method of confinement, and could reasonably foresee the animal would escape; or,

2. the owner had knowledge that the animal had escaped confinement; and, in violation of I.C. 15–2.1–21–8, the owner permitted the animal to remain at large.

*Id.*

Under either of these propositions, the injured party must show more than that the animal was not confined. Therefore, the portion of the instruction which stated that "[t]he fact that the animals were loose is not sufficient cause or basis, by itself, to support a finding of negligence" is not improper.

Greathouse contends that the use of the term "best efforts" in the last sentence of the instruction, which states "[i]t is well established that animals are prone to escape confinement despite even the best efforts to keep them contained," is confusing and misleading. Armstrong appears to have lifted the language from *Weaver v. Tucker* (1984), Ind.App., 461 N.E.2d 1159, 1161, which, in dicta explaining Indiana case law in this area, states: "However, despite even the best of efforts, animals are prone to escape confinement." Greathouse claims that the two concepts of reasonable care and "best efforts" are contradictory and therefore confused and misled the jury. She concludes the jury could have determined that if Armstrong used his "best efforts," even if those efforts did not amount to reasonable care, it need not have found Armstrong negligent.

While not a model instruction, we do not believe it to be as confusing or misleading as Greathouse contends. When the instruction is read as a whole, as well as along with the other instructions given at trial, we believe it clear that the instruction conveys the notion that animals escape confinement when all reasonable efforts have been utilized and also, above and beyond that, "despite even the best efforts to keep them contained." That is, animals may escape confinement even when a person uses greater effort to confine the animal than we require of a reasonable person. The sentence did not instruct the jury that Armstrong need not be found liable as long as he used his own best efforts regardless of whether he was negligent. We conclude the instruction is not confusing or misleading and did not relieve Armstrong of the duty to use due care.

### V.

Over objection, the trial court allowed Armstrong to cross-examine Greathouse and her expert on the pension plan options available to the decedent when he retired. Greathouse and the decedent chose the option which paid greater amounts only during the decedent's life rather than smaller amounts which would have continued to have been paid to Greathouse after the decedent's death. Greathouse claims that Armstrong attempted to mitigate the damage award:

> It was [Armstrong's] position that Mr. and Mrs. Greathouse made a decision to

maximize their pension and to take the risk of living and that they lost on that risk and they wanted someone else to make up the difference.

Brief of Appellant, p. 46.

The jury in this case found the comparative fault of Armstrong to be twenty-five percent and the comparative fault of the decedent to be seventy-five percent. Because the decedent's comparative fault was greater than the comparative fault of all other persons whose fault proximately contributed to the damages, the jury found for defendant Armstrong and against plaintiff Greathouse (R.1328). In effect, this finding barred Greathouse from recovery. *See* I.C. 34–4–33–4(a).

Greathouse's claim on this issue relates to the amount of damages she would have received in recovery, but the jury found she was barred from recovery. In other words, she was not entitled to damages in any amount. In light of this, we conclude that Greathouse was not harmed by the mitigating evidence about the pension. *Cf. Sullivan,* 543 N.E.2d at 1135 (any potential error harmless with regard to exclusion of deposition where it related solely to plaintiff's injury and jury found against plaintiff on liability).

Judgment affirmed.

BAKER and HOFFMAN, JJ., concur.