Sandra GREATHOUSE, Personal Representative of the Estate of Donald L. Greathouse, Deceased, Appellant,

v.

Stanley ARMSTRONG, Lawrence County Sheriff's Office and Commissioners of Lawrence County, Indiana, Appellees.

No. 88S01–9306–CV–692.

Supreme Court of Indiana.

June 24, 1993.

Patrick W. Harrison, Beck & Harrison, Columbus, and Robert B. Hamilton, II, Salem, for appellant.

William H. Andrews, Roland L. Chapman, Karen A. Wyle, Cotner, Andrews, Mann & Chapman, Bloomington, and James S. Stephenson, Stephenson & Kurnik, Indianapolis, for appellee.

DeBRULER, Justice.

Following a fatal collision on State Road 58 in Lawrence County, Sandra Greathouse, wife of Donald L. Greathouse, and personal representative of his estate, initiated a wrongful death action for damages. The trial court granted a motion for summary judgment in favor of certain defendants in the action, namely, the Board of Commissioners of Lawrence County ("County") and the Lawrence County Sheriff's Department ("Sheriff's Department"). On September 4, 1991, the jury returned a verdict for the remaining defendant Stanley Armstrong ("Armstrong").

The estate appealed, and the First District Court of Appeals affirmed the summary judgment, thereby upholding the trial court's determination that no special duty or relationship existed between Mr. Greathouse and the Sheriff's Department and the County which would enable the estate as plaintiff to recover for any breach of a duty and that the Sheriff Department's actions constituted discretionary functions for which the Indiana Tort Claims Act provides governmental immunity. Ind.Code § 34–4–16.5–3(6). *Greathouse v. Armstrong* (1992), 601 N.E.2d 419, 424. The Court of Appeals also affirmed the jury verdict and judgment for defendant Armstrong. *Id.*

The estate raised several issues in its appeal including the claim that the trial court committed error when granting summary judgment in favor of the Sheriff's Department and the County based upon governmental immunity and lack of special duty or relationship between Mr. Greathouse and the Sheriff's Department and the County. We grant transfer solely for the purpose of addressing this issue. Pursuant to Ind.Appellate Rule 11(B)(3), we summarily affirm with respect to the remaining issues.

■ We review the trial court's entry of summary judgment using the following standard:

The party appealing from the grant of summary judgment must persuade the appellate tribunal that the judgment erroneously determined "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). Thus, the reviewing appellate court faces the same issues that were before the trial court and follows the same process, *Burke v. Capello* (1988), Ind., 520 N.E.2d 439; *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756. The trial court's determination must be "carefully scrutinized on appeal" to assure that the non-prevailing party is not improperly prevented from having his day in court. *Ayres v. Indian*

*Heights Vol. Fire Dep't* (1986), Ind., 493 N.E.2d 1229, 1234.

*Dept. of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313. "In considering the motion for summary judgment, the contents of all pleadings, affidavits and testimony are liberally construed in the light most favorable to the non-moving party." *Ayres*, 493 N.E.2d at 1234; *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723. Where material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial. *Excel Industries v. Signal Capital Corp.* (1991), Ind.App., 574 N.E.2d 946, 947.

## I.

On September 7, 1987, Donald Greathouse, while riding his motorcycle to work, died after colliding with a black angus bull that had wandered onto State Road 58. The bull, owned by Armstrong, escaped, along with other cattle, from its nearby confines before entering the public highway.

Approximately two hours before the fatal collision, the Lawrence County Sheriff Department's dispatcher, Andrew Sanders, received a call from a citizen who reported that cattle were on State Road 58 near the Auston Powder Plant. Following the Sheriff Department's policy, to the extent he understood it, Sanders attempted to identify and contact the owner of the cattle.

Based on the reported location of the cattle, Sanders telephoned Donald Buck, a farmer whose name was on the department's "cattle call-out list." Buck informed Sanders that he did not own the cattle, but he suggested that they might belong to a farmer named Armstrong. Thereafter, Sanders attempted to contact Rush Armstrong, another cattle owner on the "cattle call-out list," calling his residence several times over the next one and a half hours. Unable to contact Rush Armstrong, Sanders decided to return to the "cattle call-out list," where he discovered the name of Stanley Armstrong. Stanley Armstrong's farm, situated on State Road 54, borders the Auston Powder Plant. When Sanders called the Stanley Armstrong residence, Mrs. Stanley Armstrong informed him that the fatal accident had already occurred. During this telephone conversation, the Sheriff's Department received the 911 call concerning Mr. Greathouse's collision.

## II.

A finding of immunity assumes negligence but denies liability. Thus, the requisite elements of actionable negligence—duty, breach and causation—need not be considered by the court in deciding the appropriateness of governmental immunity. However, "[i]f the court finds the government is not immune, the case may yet be decided on the basis of failure of any element of negligence. This should not be confused with the threshold determination of immunity." *Peavler v. Monroe Cty. Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, 46–47.

## A.

■ The Indiana Torts Claims Act (ITCA) provides that "[a] governmental entity or employee acting within the scope of his employment is not liable if a loss results from the performance of a discretionary function." I.C. § 34–4–16.5–3(6). Whether a particular act is discretionary and therefore immune is a question of law for determination by the courts. *Peavler*, 528 N.E.2d at 46.

■ In *Peavler*, this Court, seeking greater effectiveness and consistency in determining when governmental conduct falls within the class entitled to immunity under I.C. § 34–4–16.5–3(6), adopted the planning-operational test. *Id.* Under this analysis, governmental entities will not be held liable for alleged negligence arising from decisions which are made at a planning rather than operational level.

■ Through the planning-operational test, we distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding

only the execution or implementation of that policy, not entitled to immunity. *Industrial Indemnity Co. v. Alaska,* 669 P.2d 561, 563 (Alaska 1983). The critical inquiry associated with the test is "not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." *Peavler,* 528 N.E.2d at 45 (quoting *Blessing v. United States,* 447 F.Supp. 1160, 1178 (E.D.Penn.1978)). "The governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by the conscious balancing of risks and benefits." *Id.* at 46 (citing *Little v. Wimmer,* 303 Or. 580, 739 P.2d 564 (1987); *Johnson v. State,* 69 Cal.2d 782, 794 n. 8, 447 P.2d 352, 361 n. 8, 73 Cal.Rptr. 240, 249 n. 8 (1968)).

■ The Sheriff's Department contends that the nature of Sanders' actions called for policy considerations. Essentially, the Sheriff's Department argues that in responding to complaints, a dispatcher engages in policy formulation by prioritizing competing demands and considering the availability of scarce resources. Therefore, the dispatcher's response to any complaint inherently constitutes a protected planning function. Despite these assertions, the record clearly shows that Sanders merely implemented a pre-determined policy. While Sanders exercised professional judgment, his decisions did not constitute the deliberative formulation of basic policy. Therefore, we hold that Sanders' decisions were merely operational and not protected by discretionary function immunity.

■ The evidence shows the Sheriff's Department maintained an unwritten policy articulating appropriate procedures for the dispatcher to follow in cases involving loose livestock. The policy included procedures originally developed by a previous Sheriff and carried forward by subsequent administrations.[1] Following the Sheriff Department's pre-determined procedures, Sanders repeatedly attempted to contact the owner of the cattle during the period following the initial call and the time of the fatal collision.

During this time, Sanders did not ask the available deputy or jailor whether they knew who might own the cattle, nor did he send a deputy to the area to determine who might be the owner. Moreover, the record shows that during this time period, the circumstances did not require the assessment of competing priorities. The record contains no evidence that Sanders engaged in "conscious balancing of risks and benefits" associated with policy formulation.

While Sanders exercised some discretion in how he implemented the policy, his actions did not rise to the level of executive judgments that should be afforded protection under the governmental immunity doctrine. When the conduct of the government employee in implementing department regulations requires only performance of pre-determined procedures, and not the formulation of policy, such conduct is not immunized from judicial review as a "discretionary function." *Griffin v. U.S.,* 500 F.2d 1059, 1063 (1974).

The Supreme Court of Washington applied the planning-operational test in a similar case involving a police dispatcher's actions and reached an identical conclusion. *Chambers–Castantes v. King County,* 100 Wash.2d 275, 669 P.2d 451 (Wash.1983). In *Chambers–Castantes,* the plaintiff, an assault victim, sued the county, the department of public safety and the county sheriff, alleging that defendants were liable for failing to respond in a proper and timely manner to plaintiff's call for assistance. After the assault, the King County police

---

1. Upon receiving a loose livestock on the public roadways complaint, the Sheriff's Department procedures direct the dispatcher to: (1) ask whether the complainant knows who owns the cattle; (2) if complainant does not know who owns the cattle, the dispatcher consults "Call Out List for Cattle" in order to seek out the potential owner; (3) if cattle owner called from list is not the owner, the dispatcher should ask whether this individual knows who might own the cattle; and (4) ask officers on duty whether they know who owns the cattle. Should the dispatcher fail to locate the owner of the loose cattle, depending upon availability of on-duty officers, the dispatcher may send a deputy to the site.

operators received a total of eleven calls for assistance before the police arrived at the scene one hour and twenty minutes later. *Id.* 669 P.2d at 454. In ruling that the defendants were not shielded from liability by the discretionary function exception to tort liability, the court held that "[a] simple decision whether to dispatch an officer to the scene of a crime or to investigate a crime, without more, does not invoke a basic policy decision by a high level executive which would render the decision maker immune from suit. Rather, the decision is more properly characterized as operational, for it involves a type of discretion exercised at an everyday operational level." *Id.* 669 P.2d at 456.

We agree with the Washington Court's judgment in *Chambers–Castantes.* Exercising professional judgment, without more, is not equivalent to the formulation of basic policy. Countless government employees make professional judgments every day that do not constitute discretionary functions. For example, the Court of Appeals in *Huntley v. City of Gary* (1990), 550 N.E.2d 790, 792, held that when an ambulance driver chose to enter a particular intersection, his actions were not protected from legal challenge by the immunity provided in I.C. § 34–4–16.5–3(6). Although the driver exercised professional judgment in driving through the intersection, the court determined that he was not engaged in the formulation of basic policy decisions at the time. *Id.*

If policy formulation included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would then fall within the discretionary function exception. *Peavler,* 528 N.E.2d at 43. There is no such broad legislative purpose. The immunity provided the performance of discretionary functions in I.C. § 34–4–16.5–3(6) does not shield the Sheriff's Department from liability for conduct associated with implementation of its established policies.

## B.

■ By removing the defense of governmental immunity we do not thereby create a cause of action where none previously existed. To recover damages, the estate must establish the three elements of actionable negligence: (1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the decedent; (2) a breach of that duty; and (3) an injury proximately caused by the breach. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992. *See also, Miller v. Griesel* (1974), 261 Ind. 604, 610–11, 308 N.E.2d 701, 706.

■ Moreover, in order for the estate to have standing to recover in a suit against the governmental entities, there must have been a breach of duty owed to a private individual. *Campbell v. State* (1972), 259 Ind. 55, 63, 284 N.E.2d 733, 737. Liability to an individual for damages will not lie when the government entity owed a duty to the public as a whole, unless the plaintiff can show a special duty or relationship which would entitle one to recovery. *Lewis v. City of Indianapolis* (1990), Ind.App., 554 N.E.2d 13, 16; *See also, Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303, 304. "Generally, to be private, a duty must be particularized to an individual." *Simpson's Food Fair, Inc. v. City of Evansville* (1971), 149 Ind.App. 387, 391, 272 N.E.2d 871, 874.

■ The duty to exercise care for the safety of another arises as a matter of law out of some relationship existing between the parties, and it is the province of the court to determine whether such relations give rise to a duty. *Webb,* 575 N.E.2d at 995. The trial court correctly determined that the estate failed to show that a special duty or relationship existed between the decedent and the Sheriff's Department and the County. If there was any duty owed by the Sheriff's Department or the County, it was owed to the general public.

■ Reviewing the evidence most favorable to the estate, it shows, at best, that Sanders was aware that the loose cattle on the highway represented a potential risk to the general public. However, Sanders did not and could not have known that Mr. Greathouse was travelling to work on State

Road 58 the morning of the fatal accident. There is nothing in the record to show that Mrs. Greathouse's late husband had any special relationship with the Sheriff's Department or the County giving rise to a special, individualized duty.

█ Nevertheless, the estate argues that the Sheriff's Department, through Sanders' affirmative actions, gratuitously assumed the duty of Stanley Armstrong to remove his cattle from the roadway and, therefore, created a special relationship with motorists using the highway. The estate relies upon the Restatement (Second) of Torts, § 324A.[2]

Under this analysis, the estate would be required to show that the Sheriff's Department, through the actions of Sanders, assumed the duty of Stanley Armstrong to remove the cattle from the highway, and in doing so, increased the risk of harm to the decedent, who had relied upon the Sheriff's Department for his protection. The evidence, viewed most favorable to the estate's position, does not support such a finding.

The record shows that the Sheriff's Department, through Sanders' actions, merely sought out the owner of the loose cattle, in order to inform the owner of the situation. Clearly, the Sheriff's Department's efforts to locate the owner of the loose cattle did not increase the risk of harm to Mr. Greathouse. It is uncontroverted that the Sheriff's Department unsuccessfully attempted to contact Stanley Armstrong prior to the accident. Moreover, the decedent lacking prior contact with the Sheriff's Department, had no knowledge of Sanders' actions. Therefore, neither Stanley Armstrong nor the decedent relied upon the

Sheriff's Department to remove the cattle from the highway.

Consequently, the summary judgment in favor of the Sheriff's Department and the County is affirmed, as is the judgment for defendant Armstrong.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., concurs in result with opinion.

GIVAN, Justice, concurring in result on civil petition to transfer.

I concur in the result of the majority opinion; however, I cannot agree with the holding in the majority opinion that governmental immunity did not apply to the Sheriff's Department. The Court of Appeals opinion reported at 601 N.E.2d 419 correctly handles this question of law.

I would deny transfer in this case.

---

**2.** Restatement (Second) of Torts, § 324A (1965) provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, or

    (b) he has undertaken to perform a duty owed by the other to the third person, or

    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.