**Elmer STRATMEYER and Cornelia Stratmeyer, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 94–3045.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1995.

Decided Oct. 19, 1995.

---

Kenneth M. Waterman (argued), Fort Wayne, IN, for Plaintiff–Appellant.

Deborah M. Leonard, Office of the United States Attorney, Fort Wayne, IN and Jennifer H. Zacks (argued), Mark Stern, and Steve Frank, Department of Justice, Civil Division, Appellate Section, Washington, DC, for defendant-appellee.

Before EASTERBROOK, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

When the plaintiffs, Elmer and Cornelia Stratmeyer, leased cattle from Bookout Holsteins, Inc., they added the Bookout cattle to their own herd. Six months later, the herd had to be destroyed because the cattle were infected by brucellosis. The Stratmeyers filed suit under the Federal Tort Claims Act ("FTCA") against the United States. They claimed that their injuries resulted from the negligent failure of a veterinarian employed by the United States to quarantine the cattle owned by Bookout Holsteins. The district court held that the federal government was not liable under the FTCA for the alleged negligent conduct of its employee, the federal veterinarian. The Stratmeyers have appealed. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts

The factual basis of this case is uncontested. Brucellosis is a highly contagious disease that infects cattle and other domestic and wild animals. To help combat the disease, the Indiana State Board of Animal Health ("Board") and the United States Department of Agriculture ("USDA") established, in 1976, a cooperative plan called the Brucellosis Eradication Program.[1] *See* Memorandum of Understanding between the Board and the USDA, R. 83, Ex. 2. The state veterinarian manages the program in Indiana, and the USDA provides resources and personnel to assist the state in carrying out the program. In 1982, when the events giving rise to this action were taking place, authority for the brucellosis testing of cattle herds was in the hands of the state veterinarian. He was required to quarantine individual herds if brucellosis infection was detected. Ind.Code. § 15–2.1–8–11. However, when the state veterinarian issued a quarantine, he was not required to post warnings or notices of the quarantine. Ind.Code § 15–2.1–3–19. *See generally* § 15–2.1–8.

In 1982, the three decision-makers involved in this case were Dr. Lowell W. Hinchman, the state veterinarian in charge of the Brucellosis Eradication Program in Indiana; Dr. Howard K. Foster, the state epidemiologist, who, under Dr. Hinchman's direction, was delegated the authority to issue quarantines for brucellosis; and Dr. E.V.

---

1. Also in 1976 the Indiana Legislature redrafted the Animal Health provisions of the Indiana Code, Ind.Code § 15–2.1 *et seq.*, "to promote and encourage the prevention ... of infectious, contagious and communicable diseases[.]" Ind. Code § 15–2.1–1–1.

Blume, the federal veterinarian assigned by the USDA to assist Dr. Hinchman. In December 1982, three heifers in a group of forty-seven head of cattle owned by Bookout Holsteins, Inc. ("the Bookouts") reacted positively in brucellosis testing. Dr. Blume received a copy of the test chart reporting the animals tested. On or about December 13, 1982, Dr. Foster contacted Dr. Blume and instructed him to quarantine the group of animals in which the three brucellosis reactors were found. The next day Dr. Blume authorized the slaughter of the three reactors and issued the quarantine for the forty-four remaining heifers identified in the test record. He did not investigate whether the forty-four quarantined cattle had had any contact with other Bookout cattle not quarantined and located elsewhere on the Bookout farm.

Also in December 1982, the plaintiffs, Elmer and Cornelia Stratmeyer, residents of South Dakota, entered into an arrangement with Ag Assets, Inc., a New York corporation that acts as an agent between dairy farmers. Ag Assets leases dairy cows owned by one dairy operator to another dairy operator. In this case, on December 22, 1982, the Stratmeyers entered into a Dairy Cow Lease with Ag Assets; Ag Assets, in turn, purchased fifty-two head of cattle from the Bookouts and shipped them directly to the Stratmeyers' farm in Lennox, South Dakota. The Bookouts did not notify Ag Assets of the recently imposed quarantine on forty-four of their cattle and the slaughter of three brucellosis-infected reactors. Both Robert Bookout and Ag Assets assured the Stratmeyers that the cattle were healthy. On December 19, 1982, a private veterinarian tested one hundred eleven of the Bookouts' cattle for brucellosis and certified that they were free of the disease. The fifty-two head of cattle sent to the Stratmeyers, therefore, had received the health certificates required for interstate shipping before they reached the Stratmeyers.

The Stratmeyers had thirty head of their own dairy cattle that had never been vaccinated for brucellosis. When the leased cattle arrived on December 24, 1982, the Stratmeyers commingled the Bookout cattle with their own. After they discovered brucellosis-positive reactor cows in the herd in June 1983, the entire herd had to be destroyed. The Stratmeyers successfully sued the Bookouts and received damages of $133,000. They settled their claims against the Bookouts' veterinarian for $7,000, and received $19,850 in indemnity payments from the federal government in exchange for the destruction of their herd. In this action, they now claim damages for more than $380,000 from the federal government for past costs and future losses due to deprivation of future calf and milk production and loss of their livelihood as dairy farmers. The Stratmeyers' contentions are that Dr. Blume, the federal veterinarian, was negligent in failing to inspect, to quarantine and to label brucellosis-diseased cattle on the Bookout farm; in failing to quarantine the entire herd; in failing to warn prospective customers of the brucellosis; and in permitting the shipment of diseased cattle.

### B. District Court Opinion

The district court granted the federal government's motion for summary judgment. The court noted first that, under the state brucellosis law in Indiana, the state or federal veterinarian quarantining animals for brucellosis was acting under the direction of the state epidemiologist, Dr. Foster, who in turn was authorized to issue quarantines as the agent for state veterinarian, Dr. Hinchman. The federal government, the court pointed out, did not have authority to quarantine under either federal or Indiana law.

In the district court's view, the threshold issue in this case, whether the federal government owed a duty to the Stratmeyers, was also the dispositive one. The court recognized that, under the FTCA, the federal government was liable for the negligence of its employees to the same extent as a private individual in like circumstances. After reviewing other case law for "like circumstances," the district court concluded that this case was most similar to two Washington state cases in which the government was held not liable to dairy operators who received brucellosis-infected cows because, under the public duty doctrine, the government owed no duty to the farmers.[2] The district court

---

**2.** See Honcoop v. State, 111 Wash.2d 182, 759 P.2d 1188 (1988); Grange Ins. Assoc. v. United States, 989 U.S.Dist. Lexis 17389 (W.D.Wash. 1989).

determined that "Indiana's statutory scheme for the eradication of brucellosis was also enacted under this state's police powers and for the protection of the public health," R. 85 at 15 (citing *Jones v. State ex rel. Indiana Livestock Sanitary Bd.*, 240 Ind. 230, 163 N.E.2d 605 (1960)), and that the USDA and the state were cooperating in the brucellosis eradication program.

Turning to the Stratmeyers' contention that Dr. Blume was negligent, the district court stated that the alleged negligence was based on Dr. Blume's performance of a law enforcement function under Indiana law. The court then concluded that, under Indiana's public duty doctrine, as described by the Indiana Supreme Court in *Greathouse v. Armstrong*, 616 N.E.2d 364, 368 (Ind. 1993), "the Federal Government will have no liability to the Stratmeyers unless it can somehow be shown that the Board, or the State Veterinarian, or Dr. Blume owed a special duty to them." R. 85 at 18. However, the court determined that those entities owed a duty only to the public as a whole—a duty to conserve and to protect the public health and welfare of Indiana citizens. *Id.* (citing Ind.Code § 15–2.1–1–5). In the same way that the sheriff's department owed a duty to the general public in *Greathouse*, so too was Dr. Blume's duty one to the public. The court made the following evidentiary determinations concerning Dr. Blume's conduct:

> [W]hile it could be argued that Dr. Blume knew that brucellosis cattle were a potential risk to the general public, he did not know and could not have known, that Bookout cattle would ultimately be sold to the Stratmeyers—particularly since the sale of the cattle occurred after the quarantine. Thus, there is nothing in the record to show that the Stratmeyers had any special relationship with Dr. Blume, or any of the governmental entities, giving rise to an individualized duty.

In fact, the allegations of a special duty regarding failing to properly quarantine, and to warn of a brucellosis outbreak, have been considered and rejected under similar circumstances. Moreover, there is no evi-

dence to support the notion that Dr. Blume negligently permitted the shipment of the diseased cows—that was certainly more the product of Robert Bookout's own skullduggery; indeed, there is nothing in the record that shows that Dr. Blume had any knowledge that the Bookouts were about to ship cattle at all. In other words, there is no showing that Dr. Blume (or the State Veterinarian or the Board) had any special or individualized duty to the Stratmeyers—people whom Dr. Blume did not, and could not, have known about.

R. 85 at 20 (citations omitted). Because the record contains no evidence of a special relationship between the Stratmeyers and Dr. Blume that might trigger an individual duty, the court concluded that "the Federal Government owed no duty to the Stratmeyers as a matter of law." *Id.*[3]

## II

## DISCUSSION

### A. *Submissions of the Parties*

The Stratmeyers submit that the federal veterinarian, Dr. Blume, was negligent. In their view, Dr. Blume, as an authorized agent of the state veterinarian, had an affirmative duty to quarantine the entire herd of cattle once brucellosis was detected. They further contend that Dr. Blume also had a duty to warn foreseeable victims, who included purchasers of the infected cattle like the Stratmeyers, of the danger. According to the Stratmeyers, the veterinarian reasonably should have foreseen that, once the disease was detected, the Bookouts would dispose of their remaining herd and that harm to the purchasers would follow. Because Dr. Blume was the proximate cause of the Stratmeyers' harm, they submit, he is liable for their injuries.

The government, as defendant, responds that it had no duty to exercise care for the safety of the Stratmeyers. Its duty was to enforce the public safety regulations under the Brucellosis Program; for that reason, the government asserts, under Indiana law Dr.

3. The court also concluded that Dr. Blume did not owe a duty to the Stratmeyers under Indiana's "assumed duty" or "Good Samaritan" doctrine. The plaintiffs have not argued this position on appeal.

Blume's duty was owed to the public at large and not to the Stratmeyers. The government points out that Dr. Blume did not know that the Bookouts would ship their cattle to the Stratmeyers and that the Stratmeyers knew nothing of the quarantine. It notes that the district court's decision is consistent with similar cases that impose no liability for the allegedly negligent implementation of animal disease control programs and urges this court to affirm the judgment under review.

B. *Summary Judgment Standard*

When we review the district court's ruling on summary judgment, we apply the de novo standard and conduct a plenary review. Whatever doubt there may be about factual findings or inferences must be resolved in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). We shall affirm the district court's judgment only if there was no genuine issue of material fact and if the movant was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Bailor v. Salvation Army*, 51 F.3d 678, 681 (7th Cir.1995).

C. *Statutory Overview*

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671–2680, establishes a limited waiver of sovereign immunity by the United States. In general terms, the FTCA renders the federal government liable in tort to the same extent that a private individual would be in like circumstances. *See Belluomini v. United States*, 64 F.3d 299, 303 (7th Cir.1995) (stating that federal government has waived sovereign immunity whenever a "private defendant standing in the shoes of the United States would also face liability"). FTCA jurisdiction lies in federal courts, but the federal defendant's actions are governed by the substantive law of the state where the act or omission occurred. 28 U.S.C. § 1346(b);[4] *Keller v. United States*,

58 F.3d 1194, 1197 (7th Cir.1995). In this case, therefore, the plaintiffs must state a claim that is actionable under the substantive law of Indiana. We review de novo the district court's determination of the content of Indiana law. *Keller*, 58 F.3d at 1197 (citing *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220, 113 L.Ed.2d 190 (1991), and *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1298 (7th Cir.1991)).

When deciding what the liability of a private entity operating under "like circumstances" would be, we note that the "like circumstances" comparison is not as demanding as an "identical circumstances" test would be. *See Carter v. United States*, 982 F.2d 1141, 1144 (7th Cir.1992). As we recently explained in *Belluomini*,

the "like circumstances" standard is not overly stringent, and should be applied broadly so as to achieve the statute's intended purpose of putting the federal government on equal footing with private entities. *Owen v. United States*, 935 F.2d 734, 737 (5th Cir.1991), *cert. denied*, 502 U.S. 1031[, 112 S.Ct. 870, 116 L.Ed.2d 775] (1992). The appropriate question here, therefore, is not whether the United States is operating under the Act, but whether a private analog would be operating under the Act. *Carter*, 982 F.2d at 1144.

64 F.3d at 303. With these principles in mind, therefore, we turn to Indiana law and, in particular, to the appropriate private analogues.

D. *The Law of Negligence in Indiana*

Under Indiana law, a plaintiff bringing a claim under a theory of negligence must establish three elements: (1) the defendant's duty to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff proximately caused by the breach. *Bailor*, 51 F.3d at

---

**4.** The statutory provision states in part:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Govern-

ment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

683; *Greathouse v. Armstrong*, 616 N.E.2d 364, 368 (Ind.1993); *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). The existence of a duty is a question of law. *Miller v. Griesel*, 261 Ind. 604, 308 N.E.2d 701, 706 (1974). That obligation on the part of the defendant is comprised of three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Webb*, 575 N.E.2d at 995. The district court found that the Stratmeyers were unable to prove this first element of their negligence claim, the existence of Dr. Blume's duty of care arising from his relationship with the Stratmeyers.

■ We begin our examination of the duty of care owed by Dr. Blume under Indiana law by considering his responsibilities under the state statutes. The "Animal Health" provisions of the Indiana Code set forth broad powers for controlling contagious diseases affecting domestic animals. Ind. Code § 15–2.1–1–1. Its purposes include protecting the agricultural public, safeguarding the public health and welfare, and regulating the sale of animals and the transportation and disposal of carcasses. §§ 15–2.1–1–2 through –5. The Indiana State Board of Animal Health supervises the programs for disease control. § 15–2.1–3–11. Its chief administrative officer is the state veterinarian. § 15–2.1–4–1. Among the Board's powers is the quarantining of infected domestic animals. § 15–2.1–3–13(a). The Board may also cooperate with the federal government in enforcing the rules and regulations adopted by the United States Department of Agriculture. § 15–2.1–3–18; *See* Memorandum of Understanding, R. 82 at Ex. 3. This case arose in the course of such cooperation. The federal veterinarian was assisting Indiana's veterinarian and epidemiologist in carrying out Indiana's Brucellosis Eradication Program.

The facts surrounding Dr. Blume's alleged negligence are not disputed. Dr. Blume explained in his deposition that he was contacted about reactors on the Bookouts' premises, and that Dr. Foster (the state epidemiologist who ordered quarantines under the Brucellosis Eradication Program) told him to issue a quarantine on the group that was tested and identified in the test record. Dr. Foster, by affidavit, validated Dr. Blume's explanation, but further stated:

> Doctor Blume was to quarantine only the group of animals exposed to brucellosis provided there was no possible contact with any other animals on the Bookout premises. It was my intent to leave to Doctor Blume the discretion to quarantine the entire Bookout farm if necessary; although I may not have communicated this to Dr. Blume.

R. 78, Ex. 3 at 1–2. Dr. Blume stated that he was the last person to get information about brucellosis tests and that he had accepted Dr. Foster's judgment and quarantined only the tested group of cattle. He did not investigate whether any of the quarantined cattle had been commingled with other cattle on the Bookouts' premises.

■ In considering whether the federal veterinarian owed a duty of care to the Stratmeyers, the district court accepted the government's position that Dr. Blume was engaged in a public function. The court further concluded that the federal government did not have the right to issue quarantines under its own authority; the power of quarantine belonged to the state, and the federal veterinarian received his authority as a borrowed servant of the federal government. We cannot accept this analysis in its entirety. Indiana law provides statutory authority for a USDA agent to quarantine infected animals, and, in carrying out his duties, to "have the same power and protection as peace officers." The statute provides:

§ 15–2.1–18–2 **Authority given USDA**

Sec. 12. Authority Given USDA. The agents of the United States department of agriculture shall have the right of inspection, testing, quarantine and condemnation of animals within this state affected with any contagious or infectious disease, suspected to be so affected, or that may have been exposed to any such disease. For such purposes, they may enter upon any ground or premises and may call upon the sheriffs, constables and other peace officers to assist them in the discharge of their duties. Such sheriffs, constables, or peace officers shall assist such inspectors when so requested, and such inspectors shall have the same power and protection

as peace officers, when engaged in the discharge of their duties. However, this state shall not be liable for any damages or expenses caused or made by such inspectors.

 Although we cannot accept the district court's reasoning in its entirety, we reach the same conclusion as the district court. There is ample authority to support the determination that Dr. Blume was performing a public function and owed no duty of care to the Stratmeyers. First, it is clear that the animal health and brucellosis statutes were enacted pursuant to the police power of the state to safeguard the public health and welfare of the citizens of Indiana. §§ 15–2.1–1–2 through –5; *Jones v. State ex rel. Indiana Livestock Sanitary Bd.*, 240 Ind. 230, 163 N.E.2d 605, 606 (1960). The Indiana Legislature recognized that the protection of the public health and welfare depends upon the control and regulation of sanitary and health conditions for domestic animals, § 15–2.1–1–5, which include the eradication of brucellosis in animals. *See generally* §§ 15–2.1–3–13, 15–2.1–8. Thus we conclude that the statutes impose a duty on government officials to the public as a whole rather than to a particular individual.

 "When the government's duty is owed to the public at large, there is no governmental liability for negligence." *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind.1994). To recover under a theory of negligence when the liability of a governmental entity is at issue, therefore, the plaintiff must show that the duty of care running from the government defendant to the plaintiff is not an obligation to the public at large, but rather an obligation to the plaintiff as a particular individual. *Greathouse*, 616 N.E.2d at 368. "Liability to

an individual for damages will not lie when the government entity owed a duty to the public as a whole, unless the plaintiff can show a special duty or relationship which would entitle one to recovery." *Id.* That duty of care arises out of the relationship existing between the parties. Under Indiana law, the USDA agents, such as the USDA veterinarian Dr. Blume, are granted "the same power and protection as peace officers, when engaged in the discharge of their duties." Ind.Code § 15–2.1–18–12. In Indiana, although police officers are subject to liability for the breach of private duties owed to individuals, they are immune from liability for breach of public duties owed to the public at large. *See Quakenbush v. Lackey*, 622 N.E.2d 1284, 1288–91 (Ind.1993). Dr. Blume's liability for allegedly failing to quarantine the entire Bookout herd must be shown to be a duty owed specifically to the Stratmeyers.

The Indiana Supreme Court, in *Mullin*, set out a three-part test for determining when a private duty is imposed on a governmental entity. It requires the court to balance the following factors:

(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;
(2) knowledge on the part of the municipality that inaction could lead to harm; and
(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

*Mullin*, 639 N.E.2d at 284. The state supreme court concluded in that case that the plaintiff failed to establish the existence of a private duty on the part of the city to particular individuals when it decided not to dispatch an ambulance immediately to the scene of a fire. *Id.* at 285.[5] The city had given no

---

5. *Mullin* presents its three-part "private duty" test for determining the liability of a governmental entity without distinguishing that entity's conduct as inaction or wrongful action, nonfeasance or misfeasance. However, the Indiana Supreme Court then points out that the test is compatible with "existing law reflecting a public policy that the mere existence of rescue services does not, standing alone, impose upon the governmental entity a duty to use them for the benefit of a particular individual," 639 N.E.2d at 284, and contrasts that nonfeasance situation with a misfeasance one in which the government leads someone to believe in, and rely on, the arrival of

rescue services, to their detriment. *Id.* at 285. The *Mullin* "private duty" test recently has been interpreted to be a test that applies only in nonfeasance cases, and not in affirmative negligence cases in which the governmental entity has caused the plaintiff's harms, *see Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1067 (Ind. Ct.App.1995). We note here that the Stratmeyers' allegation is one of nonfeasance, i.e., the veterinarian's failure to quarantine the entire herd, and not one of misfeasance, such as a promise to quarantine which was not carried out, upon which the plaintiff relied to his detriment, and which caused the plaintiff's injury.

assurance that an ambulance would be sent, and the plaintiff did not detrimentally rely on the city.

In the case before us, the Stratmeyers have failed to establish any relationship between themselves and Dr. Blume, and thus can show no duty owed by Dr. Blume to them. There was no showing that Dr. Blume had made assurances to the Stratmeyers, that he knew of possible harm to them, or that the Stratmeyers relied on his affirmative conduct to their detriment. Instead of relying on a direct relationship, however, the plaintiffs claim that the veterinarian should have known that they would have been foreseeable victims. The imposition of a duty based on a foreseeable victim and foreseeable harm has been likened to an inquiry into proximate cause:

> Both seek to find out what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come onto the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Webb v. Jarvis,* 575 N.E.2d 992, 997 (Ind. 1991) (citing 3 Fowler V. Harper et al., *The Law of Torts* § 18.2 (2d ed. 1986)). Nothing in the record indicates that Dr. Blume had knowledge, or should have known, that the Bookouts would later ship some of their cattle to the Stratmeyers. The Stratmeyers may well have relied on assurances by the Bookouts or by Ag Assets, or on the health certificates approving the cattle for interstate shipment. However, they had no reason to know of, or to rely on, Dr. Blume's quarantining only the cattle tested by the state epidemiologist on Bookout's farm, in a herd segregated from the other Bookout cattle, and the Stratmeyers' later receipt of other cattle that had been tested by another veterinarian and certified for interstate shipment.

We conclude, as did the district court, that the federal veterinarian did not owe a special duty to the individual plaintiffs for failing to quarantine all the cattle at the Bookout farm. We hold that the plaintiffs have failed to establish, under Indiana law, the existence of a duty owed to them by the USDA veterinarian, and therefore that they have no claim against the United States under the FTCA.

Conclusion

Accordingly, we affirm the judgment of the district court.

AFFIRMED.