**Mildred A. BELLUOMINI, Individually and as Independent Executrix of the Estate of Harry Belluomini, Deceased, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 94–3864.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1995.

Decided Aug. 28, 1995.

Order Denying Rehearing, Rehearing En Banc and Petition to Certify Questions Sept. 26, 1995.

---

Thomas A. Demetrio, Michael K. Demetrio, David C. Wise (argued), Corboy & Demetrio, Chicago, IL, David A. Novoselsky, Novoselsky & Associates, Chicago, IL, for plaintiff-appellant.

Phyllis J. Pyles, Dept. of Justice, Torts Branch, Civ. Div., Steven B. Snyder (argued), U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendant-appellee.

Before BAUER and RIPPLE, Circuit Judges, and REYNOLDS, District Judge.*

BAUER, Circuit Judge.

Presented for our review in this case is the question of whether the Illinois Workers' Compensation Act ("Act"), 820 ILCS 305/5(a), is a valid defense to a claim brought against the United States Marshals Service under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The suit was filed by the widow of a Court Security Officer who was killed in the line of duty. The district court concluded that the Act does in fact preclude such a claim, and we affirm.

On July 20, 1992, Court Security Officer Harry Belluomini was transporting a prisoner named Jeffrey Erickson from the Dirksen Federal Building in Chicago back to his cell at the nearby jail. While in the garage, Erickson managed to free himself from his handcuffs and steal the firearm from one of the accompanying officers. Erickson shot and killed Roy Frakes, a Deputy United States Marshal. He then shot Belluomini who was guarding the entrance to the garage. Before Erickson could flee out of the parking garage, however, a wounded Belluomini fired a shot at Erickson which struck him in the back. As he lay dying from the wound, Erickson shot and killed himself.

Belluomini died shortly thereafter. His widow filed this action under the FTCA,

---

* The Honorable John W. Reynolds, of the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

alleging negligence on the part of the United States Marshals Service. The government moved for summary judgment, claiming that the Illinois Workers' Compensation Act provided Belluomini with an exclusive remedy thereby precluding a separate tort action. The district court granted the motion, and Belluomini appeals.

■ Summary judgment shall be rendered if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). We review a district court's grant of summary judgment using the same standard after viewing the evidence and drawing all inferences in a light most favorable to the nonmoving party. *CSX Transp., Inc. v. Chicago & North Western Transp. Co., Inc.,* 62 F.3d 185, 188 (7th Cir. 1995).

Before we delve into an analysis of the interplay between the FTCA and the Act, we pause to describe the exact nature of Harry Belluomini's employment agreement. He was actually employed by a company named General Security Services Corporation ("GSSC"). The Marshals Service hired GSSC to supply Court Security Officers (CSOs) to assist in the protection of the federal judiciary. Its agreement with the Marshals Service obligated GSSC to pay CSOs their wages and insure them under workers' compensation.

■ Most private employers operating in Illinois contribute to the state's workers' compensation fund. Workers' compensation entitles an employee who has been injured in the course of employment to an award of benefits without regard to fault. In exchange, the employee forfeits the right to recover tort damages for the same injury; the award constitutes that employee's exclusive remedy.

■ The scope of the Act extends to the scenario in which one employer loans an employee to another employer. 820 ILCS 305/1(a)(4). If the employee is injured while in the employ of the borrowing employer, the loaning employer and the borrowing employer are jointly and severally liable for any benefits which the employee is due. *Id.* Conversely, both employers share the immunity from tort liability conferred by the Act. *O'Loughlin v. ServiceMaster Co. Ltd. Partnership,* 216 Ill.App.3d 27, 159 Ill.Dec. 527, 532, 576 N.E.2d 196, 201 (1991). Illinois law provides two means of determining whether a particular relationship constitutes borrowed employment. *Chicago's Finest Workers Co. v. Industrial Comm'n,* 61 Ill.2d 340, 335 N.E.2d 434, 436 (1975).

■ The first test comes from the Act itself. It provides:

An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring, or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers shall be deemed a loaning employer within the meaning and provisions of this Section.

820 ILCS 305/1(a)(4). If one does not qualify as a loaning employer under this provision, there is an alternative test. It focuses on the extent of control which the alleged borrowing employer has over the employee and inquires as to whether a contract existed between the employee and the borrowing employer. *Russell v. PPG Indus., Inc.,* 953 F.2d 326, 329 (7th Cir.1992). Because we believe that GSSC qualifies as a statutory loaning employer, we need not address the second test.

■ To establish a borrowed employment relationship under the statute: (1) a substantial portion of the alleged loaning employer's business must consist of furnishing employees to do the work of other employers; (2) the loaning employer must pay the employee's wages even though that employee is working for another employer; and (3) the borrowing employer must be operating under the Act. That GSSC meets the first two of these three requirements is beyond dispute and can be handled succinctly.

■ In his deposition, GSSC's Vice–President, Andrew Pierucki, acknowledged that "a

substantial portion of [GSSC]'s business involves supplying security personnel to the government." He estimated that between eighty and eighty-five percent of his business consists of supplying CSOs to the government. GSSC's remaining employees handle administrative matters at its Minneapolis headquarters.

This evidence stands unrebutted and establishes that a substantial portion of GSSC's business consists of furnishing employees to other employers. The district court was therefore correct in finding the first requirement of the statutory test fulfilled. Also undisputed is that GSSC paid the wages of the CSOs, and therefore, the second prong of the test is also satisfied.

Left for our consideration is the question of whether the Marshals Service (and thereby the United States) can be considered to be operating under the Act. It would seem, at first blush, that since the Marshals Service does not contribute to workers' compensation on behalf of the CSOs, the United States is in no position to benefit from a workers' compensation defense. Framing our inquiry, however, is the FTCA, and that complicates the matter.

█ The FTCA grants the district courts jurisdiction over a specific breed of tort claims for which the United States has waived its sovereign immunity. This waiver, however, is limited; it extends only to those cases in which a private defendant standing in the shoes of the United States would also face liability. 28 U.S.C. § 1346(b). Hence, the success of an FTCA claim hinges on the liability of a private entity operating under "*like* circumstances." *Carter v. United States*, 982 F.2d 1141, 1144 (7th Cir.1992). Not to be confused with "identical circumstances," the "like circumstances," standard is not overly stringent, and should be applied broadly so as to achieve the statute's intended purpose of putting the federal government on equal footing with private entities. *Owen v. United States*, 935 F.2d 734, 737 (5th Cir.1991), *cert. denied*, 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992). The appropriate question here, therefore, is not whether the United States itself is operating under the Act, but whether a private analog would be operating under the Act. *Carter*, 982 F.2d at 1144.

█ An employer's obligations under the Act depend in large part on the nature of the employer's business. Certain occupations require the employer to make contributions on behalf of his employees. On the other hand, with other occupations, an employer may elect to participate. Section 3 of the Act sets forth a list of occupations which trigger automatic coverage. 820 ILCS 305/3. The Act deems these pursuits "extra hazardous." *Id.* Included in this section is

> any enterprise in which statutory or municipal ordinance regulations are now or shall herewith be imposed ... for the protection and safeguarding of the employees or the public therein.

*Id.*

█ The Marshals Service is empowered to provide for the security of the federal courts. 28 U.S.C. § 566. Its function includes the personal protection of federal judges, court officers, witnesses, and other threatened persons. *Id.* The Marshals Service hires CSOs to assist it in this task. Undoubtedly, a private employer whose function was similar would fall within the ambit of this statute. The district court was therefore correct in concluding that "because a private individual in these circumstances would be automatically covered under section 3 of the Act, [the United States] is likewise covered by this provision."

Even if we were to hold that a private analog was, for some reason, not subject to the automatic coverage provisions of section 3, we would be compelled to arrive at the same result. Recall that the Marshals Service required GSSC to provide workers' compensation coverage for CSOs. By doing so, the Marshals Service acknowledged its desire to have CSOs properly protected and performed the functional equivalent of providing that coverage itself. Therefore, in applying the "like circumstances" standard, the most reasonable analogy would be a private entity which had elected to provide workers' compensation coverage rather than one which had not.

This conclusion squares with the Tenth Circuit's reasoning in *Griffin v. United States*, 644 F.2d 846, 848 (10th Cir.1981). There, the court concluded that the United

States was entitled to the immunity of Kansas' workers' compensation statute because by requiring its contractor to provide workers' compensation insurance, the United States had indirectly paid for those benefits. Our case is indistinguishable. Several circuits, including ours, have accepted the "functional equivalence" rationale in determining whether the United States can take advantage of state limits on tort liability. *See, e.g., Carter,* 982 F.2d at 1142–44 (allowing a Veterans Administration hospital to claim the benefit of an Indiana limit on medical malpractice damages even though it was not a "qualified provider" under state law); *Lozada v. United States,* 974 F.2d 986, 987–89 (8th Cir.1992) (allowing an Air Force hospital to benefit from a cap on medical malpractice liability even though it had not contributed to a compensation fund as required by state law); *Owen,* 935 F.2d at 736–38 (same).

■ Though it may appear to create a windfall in favor of the United States, further reflection reveals that the private analog rule serves an important purpose. It prevents states from "adopting rules which enrich their own citizens at the expense of the deepest pocket." *Carter,* 982 F.2d at 1143. Moreover, the rule is not one-sided. Immunities which states confer upon their own state agencies do not extend to the federal government. *Id.* And as we noted in *Carter,* the requirement of "like circumstances" rather than "identical circumstances" can work against the United States. "[T]he United States may be liable for negligence in carrying out acts that no private person performs, because there are 'like' circumstances that lead to private liability." *Id.* at 1144 (citing *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955)).

■ The appellant attempts to escape the dictates of the statutory loaning employer provision by characterizing GSSC as an independent contractor. The determination of whether a relationship is that of an independent contractor or employer/employee is fact-dependent. *Taylor v. Kohli,* 162 Ill.2d 91, 204 Ill.Dec. 766, 767, 642 N.E.2d 467, 468 (1994). Among the factors which we consider are the manner of hiring, the right to discharge, the degree of supervision, and most importantly, the right to control and direct the work done. *Id.* at 468–69.

All of these factors weigh heavily in favor of the Marshals Service. According to Pierucki, it is the Marshals Service which has the responsibility for determining how security is provided in the federal building. This includes the authority to assign duties and stations to individual CSOs. Although GSSC provides a "Lead CSO" for on-site supervision, that officer essentially functions as a liaison between the CSOs and the Marshals Service. The Marshals Service trains and deputizes new CSOs and provides them with their badges and their weapons. GSSC cannot reduce or increase the number of CSOs on site without the Marshals Service's approval. The Marshals Service also retains the authority to discharge CSOs. These factors combine to undermine any claim that GSSC and the Marshals Service had a principal/independent contractor relationship.

Our decision is not rendered without a significant degree of regret. We are painfully aware of its irony; we have limited the redress available to the widow of a man who gave his life protecting the very building in which we write this decision. Nevertheless, the federal and state legislatures have spoken, and the law on this matter is clear. The Illinois Workers' Compensation Act precludes Mrs. Belluomini's FTCA claim. The decision of the district court is therefore

AFFIRMED.

### ORDER

Sept. 26, 1995

On consideration of the petition for rehearing, rehearing *en banc,* or, in the alternative, to certify questions to the Illinois Supreme Court, filed by plaintiff-appellant, all of the judges on the original panel have voted to deny and no judge in active service has requested a vote thereon.

Therefore, the petition for rehearing, rehearing *en banc,* or to certify questions to the Illinois Supreme Court is DENIED.