**Rosa Lee BORAH, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV 96–1352.**

United States District Court,
E.D. New York.

Feb. 7, 1997.

Shapiro & Coleman by Richard Coleman, North Massapequa, NY, for plaintiff.

Zachary W. Carter, United States Attorney by Stacy L. Gordon, Assistant U.S. Attorney, Brooklyn, NY, for defendant.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Rosa Lee Borah brings this action against the United States under the Federal Tort Claims Act ("FTCA") based upon injuries suffered when she slipped and fell at the United States Merchant Marine Academy in Kings Point, New York (the "Academy") on September 12, 1994. Plaintiff works for Classico Contractors ("Classico") performing cleaning and maintenance activities. The alleged slip and fall took place while plaintiff was performing her duties for Classico at the Academy which is under contract to perform cleaning and maintenance services for the Academy. Prior to commencing this action, plaintiff sought and received worker's compensation benefits from Classico for her injuries. Defendant now brings a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure claiming that plaintiff's exclusive remedy for this work related injury was her workers compensation benefits. However, the Court will treat the motion as one for summary judgement pursuant to Rule 56 since matters outside of the pleadings have been submitted by both parties. For the reasons stated below, defendant's motion is denied.

### I. BACKGROUND

On September 12, 1994 plaintiff was working at the United States Merchant Marine Academy performing cleaning and maintenance services for her employer Classico. Pursuant to a contract dated September 28, 1990 (the "Contract"), Classico is responsible for the cleaning and maintenance services at the Academy. Plaintiff has been employed by Classico to perform services at the Academy since 1990.

According to the Contract, Classico's responsibilities include: furnishing the necessary personnel, materials, equipment, services and facilities to perform its work; providing an on-site superintendent or supervisor; providing a supervisor necessary for management of Classico's operations; provide proper training and direction to Classico's workers in their individual tasks; maintaining and controlling Classico's employees' work and operation, including controlling the quality of the employees' work; overseeing its employee's competency, conduct and integrity, and if necessary, taking necessary disciplinary action that Classico in its discretion deemed necessary. In addition, the Contract required Classico to secure, pay for and keep in force Workers compensation insurance as required by law of the state.

In her affidavit, Plaintiff states that when she began working for Classico, she was instructed by Classico's on site supervisor, Rose Neal, who was present at the Academy daily, that Ms. Neal would be her boss and that she was to report to Ms. Neal. Plaintiff received her daily work assignments from Ms. Neal who was located in Classico's office at the Academy. Plaintiff identifies several examples of interaction with Ms. Neal regarding her employment including, instructions as to where to work, instructions as to the materials to be used and not used and instructions to report anything out of the ordinary to Ms. Neal such as a locked bathroom. In addition, plaintiff's states that her

required uniform read "Classico Cleaners" and her paychecks came from Classico. Ms. Neal held meetings regularly to communicate the results of her daily inspections of the work performed by Classico's employees. Lastly, Plaintiff denies ever receiving any direct supervision or feedback from any employee of the Academy.

According to James Amoroso, the Head of the Department of Administrative Services for the Academy, the Academy retained the authority to oversee and control the quality of Plaintiff's work. According to Amoroso, Bess Blumenfeld, an Academy employee, would regularly review Plaintiff's work and report any unsatisfactory work to Borah's immediate supervisor. He states that Blumenfeld had the authority to relocate and or terminate Plaintiff. Plaintiff was required to abide by the rules and regulations of the academy.

## II. DISCUSSION

A party seeking summary judgement must demonstrate that "there is no genuine issue of any material fact and that the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. Of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ It is axiomatic under the doctrine of sovereign immunity, the government cannot be sued unless it waives its right to immunity. The FTCA waives the government's sovereign immunity to suit for common law torts committed by employees of the United States. *See* 28 U.S.C. §§ 1346(b), 2671 et seq. However, the waiver only extends to torts committed by government employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b).

The plain meaning of section 1346(b) is that the United States cannot be held liable when there is no comparable cause of action against a private citizen. The language of 28 U.S.C. § 2674 restates the threshold limitation on the FTCA's waiver of sovereign immunity: 'The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under *like circumstances....*'

*C.P. Chemical Company, Inc. v. United States*, 810 F.2d 34 (2d Cir.1987) (emphasis added). The test of whether the government has waived its immunity under the FTCA is referred to as the like circumstances test.

■ The government argues that whenever a government contract requires a contractor to provide workers compensation insurance to its employees that are working on government property, that application of the like circumstances test of the FTCA prohibits recovery from the United States for workplace injuries. The government reasons that if it were acting as a private employer in like circumstances to its contracting for its services, it would have provided workers compensation insurance, as evidenced by the requirement in the Contract that Classico provide such insurance. The government also asserts that it has indirectly provided plaintiff with its workers compensation insurance since the cost of such insurance is implicitly subsumed in the price of the Contract.

There are no reported Court of Appeals or District Court decisions in the Second Circuit addressing the issue before the Court. However, The government points to four other circuits that have held workers compensation benefits to be a plaintiff's exclusive remedy where the plaintiff suffered workplace inju-

ries while working for an employer under a contract to provide the government with services and where that contract required the employer to provide workers compensation insurance. *See Belluomini v. United States,* 64 F.3d 299 (7th Cir.1995) (holding that the United States was a statutory loaning employer under Illinois law); *Vega–Mena v. United States,* 990 F.2d 684 (1st Cir.1993) (holding that the United States was a statutory employer under Puerto Rico law); *Wilcox v. United States,* 910 F.2d 477 (8th Cir. 1990) (holding that the United States was a statutory employer under Missouri law); *Griffin v. United States,* 644 F.2d 846 (10th Cir.1981) (holding that the United States was a statutory employer under Kansas law). Contrary to the government's argument, however, each of these cases turned upon a state law rule which afforded immunity to third parties that satisfied a test as statutory employer. It was not the mere fact that the United States required the employer to maintain workers compensation insurance that resulted in the dismissal of the action, but rather the application of the applicable state workers compensation rules which treat certain third parties as employers. In each of these cases, even if the United States were a private person, the respective state workers compensation rules would still have resulted in immunity from suit because the United States had proven it satisfied the respective elements of each state's statutory employer rule.

■ In two of the cases, the Circuit court states in dicta that the like circumstances test would result in analogizing the United States to an employer that had provided the plaintiff workers compensation insurance. *See, Belluomini,* 64 F.3d at 303; *Griffin,* 644 F.2d at 847–48. However, as stated above, there are no reported cases in this district or circuit applying the like circumstances test in this fashion. Moreover, even the *Belluomini* and *Griffin* Courts cited state workers compensation rules which afforded immunity to third parties by treating them as statutory employers rather than simply applying the general immunity granted to actual employers. If the like circumstances test alone required treatment of the United States as the worker's actual employer, any reference to a statutory employer rule would have been unnecessary. The Court does not believe that the like circumstances test can be read to immunize the government anytime a contractor is required to provide workers compensation insurance. The Court finds that the appropriate application of the like circumstances test in this case is to analogize the Academy to a private contractor that had subcontracted with the plaintiff's employer. Consequently, the government is entitled to immunity from suit only if it can prove that it is a statutory employer under New York's workers compensation statute.

■ Under New York law, a general employee of one employer may also be a special employee of another, notwithstanding the general employer's responsibility for payment of wages and for maintaining workers compensation and other employee benefits. *Thompson v. Grumman Aerospace Corp.,* 78 N.Y.2d 553, 578 N.Y.S.2d 106, 107–08, 585 N.E.2d 355, 356–57 (1991). While not determinative, a significant and weighty factor in determining special employee status is "who controls and directs the manner, details and ultimate result of the employee's work". *Id.* At 109, 585 N.E.2d at 358. *See also Cameli v. Pace University,* 131 A.D.2d 419, 516 N.Y.S.2d 228, 229 (A.D. 2 Dept.1987) (stating that the key factor is the right to direct the work and the degree of control exercised over the employee). Although the *Thompson* Court ruled as a matter of law that Thompson was a special employee of Grumman, it stated that a person's categorization as a special employee is usually a question of fact. *Thompson,* 578 N.Y.S.2d at 108, 585 N.E.2d at 357. In that case, Thompson considered a Grumman supervisor to be his boss, and he reported daily only to his Grumman supervisor, who directed, instructed, assigned, supervised and controlled his work. He could not be reassigned to another job, and could be terminated only by Grumman. *Id.* Likewise, in the *Cameli* case, Cameli considered Pace University's Chief Engineer to be his foreman to whom he directly reported and provided his written reports. His daily work duties were directed and his training was conducted by Pace University's Chief Engineer. *Cameli,* 516 N.Y.S.2d at 229.

In this case, the government argues that it controlled the work of the plaintiff through the supervision of Bess Blumenfeld. Conversely, Plaintiff asserts that she reported only to Rose Neal, Classico's supervisor, and describes her extensive daily contact with Ms. Neal. In addition, Plaintiff cites numerous provisions in the Contract that place responsibility for control and supervision of Classico's employee's job performance.

It is undisputed that plaintiff's sole duties since she started with Classico in 1990 involved janitorial work at the Academy. Moreover, the Contract does give the Academy the right to have the Plaintiff reassigned or terminated. However, the Court finds that the issue of control and direction of Plaintiff's work is a material issue of fact precluding a ruling as a matter of law that plaintiff is a special employee of the Academy.

█ Lastly, the United States asserts that Classico's contractual obligation to indemnify the government for any lawsuits by its employees should somehow work to prevent plaintiff from suing the government. However, The government provides no authority for such a proposition and the Court can find no reason why Classico's agreement with the Academy to assume liabilities that it would otherwise be immune from should interfere with Plaintiff's rights in any way.

## III. CONCLUSION

For the above reasons, Defendant's motion is denied. The parties are referred to the Magistrate Judge to continue discovery.

SO ORDERED.