Matthew R. WILHITE and Wendy Jo Wilhite, Plaintiffs,

v.

ILLINOIS POWER COMPANY, Defendant.

No. 98–3293–CV.

United States District Court, C.D. Illinois, Springfield Division.

April 10, 2001.

Eugene I. Pavalon, Christine Walsh Donnelly, Pavalon, Gifford, Laatsch & Marino, Chicago, IL, for Plaintiffs.

Donald E. Jose, David Wiedis, Kristen Beth Komer, Jose & Wiedis, West Chester, PA, Richard F. Nelson, Chicago, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

Instead of pursuing a claim under Illinois' Workers' Compensation Act, Matthew Wilhite wishes to pursue a public liability action.

This he cannot do.

He was a "borrowed" employee at the time of his accident, therefore, his remedy must be limited to workers' compensation.

Summary judgment for the Defendant.

### FACTS

Plaintiff Matthew Wilhite was employed by North American Energy Services ("NAES"), a company which supplied craft personnel (*i.e.* painters, insulators, electricians, etc.) to Illinois Power for repair work at Illinois Power's nuclear power station in Clinton, IL. Because Wilhite's work at the Clinton Power Station required access to restricted areas, he had to receive security clearance and special training. Illinois Power controlled these matters and exercised strict oversight of Wilhite's work pursuant to the "Maintenance Augmenta-

tion Services" agreement it had with NAES. Wilhite knew about these restrictions when he began work at the Clinton Power Station on June 17, 1997. On June 27, 1997, Wilhite was exposed to radiation while working at the Clinton Power Station and could not continue his employment.

Wilhite subsequently filed a public liability action under the Price Anderson Amendments Act, a statute which allows a person who was injured in a "nuclear incident" to seek damages for injuries not covered by workers' compensation. *See* 42 U.S.C. § 2210. Radiation exposure is clearly compensable under the Illinois Workers' Compensation Act, 820 ILCS § 305/3–3(7) (2000), and neither party contests this. Instead, Wilhite argues that he should be allowed to proceed under the Price Anderson Amendments Act because he was not an employee of Illinois Power and was, therefore, not covered by workers' compensation. His wife Mary Jo joins in his Complaint, alleging that she lost consortium and suffered financial damages as a result of his injury. Illinois Power contends that Matthew Wilhite was a "borrowed" employee for purposes of his work at the Clinton Power Station. It argues that workers' compensation is the sole avenue by which he may seek damages. Thus, it moves the Court to find that Matthew Wilhite cannot pursue a claim under the Price Anderson Amendments Act.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1393 (1985). When determining whether factual issues exist, a "court must view all the evidence in the light most favorable to the non-moving party." *See Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). However, "[s]ummary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *See McKenzie v. Illinois Department of Transportation,* 92 F.3d 473, 479 (7th Cir. 1996) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (1986)).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Rather, he "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* Finally, "[a]lthough [the court] must, for purposes of summary judgment review, draw any inferences from the record in favor of [the plaintiff, it is] not required to draw every conceivable inference from the record. [It] need draw only reasonable ones." *See Tyler v. Runyon,* 70 F.3d 458, 467 (7th Cir.1995) (citation omitted).

**ANALYSIS**

■ Illinois' Workers' Compensation Act entitles employees who have been injured in the course of employment to obtain an award of benefits without regard to

fault. In exchange for this benefit, the employee accepts the Workers' Compensation Act as his exclusive remedy and forfeits his right to recover tort damages for the same injury. *See Belluomini v. United States,* 64 F.3d 299, 302 (7th Cir.1995). Among other things, the Act provides that where one employer loans an employee to another employer and the employee then gets injured, the loaning employer and the borrowing employer are jointly and severally liable for any benefits which the employee is due. *See Id.,* citing 820 ILCS 305/1(a)(4). Furthermore, the employers share the immunity from tort liability conferred by the Act. *See Belluomini,* 64 F.3d at 302, citing *O'Loughlin v. ServiceMaster Co. Ltd. Partnership,* 216 Ill.App.3d 27, 159 Ill.Dec. 527, 532, 576 N.E.2d 196, 201 (1991).

There are two means of determining whether a particular relationship constitutes borrowed employment under Illinois law. *See Belluomini,* 64 F.3d at 302 (citation omitted). Illinois' Workers' Compensation Act provides the first test. It states that:

> An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring, or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers shall be deemed a loaning employer within the meaning and provisions of this Section.

*See* 820 ILCS 305/1(a)(4).

■ If an employer does not qualify as a loaning employer under the first test, there is a second test. The second test "focuses on the extent of control which the alleged borrowing employer has over the employee and inquires as to whether a contract existed between the employee and the borrowing employer." *See Belluomini,* 64 F.3d at 302, citing *Russell v. PPG Indus., Inc.,* 953 F.2d 326, 329 (7th Cir. 1992). The parties in this case agree that the second test—the "borrowed" employee test—applies here.

■ Determining whether a person is a "borrowed" employee for purposes of this test is usually a question of fact. However, it becomes a question of law where the facts are undisputed and capable of only one inference. *See Willfong v. Dean Evans Co.,* 287 Ill.App.3d 1099, 1101, 223 Ill.Dec. 479, 679 N.E.2d 1252, 1254 (1997) (affirming summary judgment after finding plaintiff was a loaned employee). Thus, the Court will only allow Illinois Power's Motion For Summary Judgment if Illinois Power can clearly establish that Matthew Wilhite was a borrowed employee.

## 1. Borrowed Employee

■ Illinois law relies on two factors to determine whether a borrowed employee relationship exists: (1) whether the borrowing employer had the right to direct and control the manner in which the plaintiff performed the work; and (2) whether a contract of hire, either express or implied, existed between the plaintiff and the defendant. *See Russell v. PPG Industries, Inc.,* 953 F.2d 326, 331 (7th Cir.1992), citing *A.J. Johnson Paving Co. v. Industrial Comm'n,* 82 Ill.2d 341, 347–48, 45 Ill.Dec. 126, 412 N.E.2d 477, 480–81 (1980). Of these two factors, "the right to control is primary." *Russell,* 953 F.2d at 331.

## A. Control

■ Whether an employer has control over an employee's work depends upon the character of the supervision of the work done, the manner of direction of the employee, the right to discharge, the manner

of hiring, and the mode of payment. *See Freeman v. Augustine's Inc.,* 46 Ill.App.3d 230, 234, 4 Ill.Dec. 870, 360 N.E.2d 1245, 1247–48 (1977). Although the record indicates that NAES paid Wilhite, Illinois courts have long held that "[t]he mere fact that the employee does not receive his wages from the [borrowing] employer will not defeat the finding of a loaned-employee situation." *See, i.e., A.J. Johnson,* 82 Ill.2d at 349, 45 Ill.Dec. 126, 412 N.E.2d at 481. Such a method of compensation is so common with outfits like NAES that it has virtually no impact on the issue of who controlled Wilhite's work. *See Chaney v. Yetter Manufacturing Co.,* 315 Ill.App.3d 823, 829, 734 N.E.2d 1028, 1032, 248 Ill. Dec. 737, 741 (2000). Thus, the Court focuses on the remaining four factors to decide this issue.

With regard to supervision, Wilhite admits that "Illinois Power determined where, when, and how the work was to be done" and that "he submitted to Illinois Power's detailed control over his access to, and movements within, Clinton." *See* Pl.'s Resp. to the Def.'s Statement of Material Facts Claimed to be Undisputed, ¶¶ 36, 27 respectively. In terms of his manner of direction, Wilhite admits that he "had no discretion to deviate from Illinois Power's instructions." *See Id.* at ¶ 37. Wilhite also admits that Illinois Power "had the ultimate right to approve or disapprove of the NAES workers who were lent to work at Clinton" and that they could refuse to employ any NAES worker if the worker did not meet its approval. *See Id.* at ¶¶ 10, 36. This establishes Illinois Power's right to discharge Wilhite. *See Russell,* 953 F.2d at 331 (authority to dismiss loaned employee from temporary job and direct him back to loaning employer satisfies discharge element); *see also Freeman,* 4 Ill. Dec. at 874, 360 N.E.2d at 1249; *Evans v. Abbott Products, Inc.,* 150 Ill.App.3d 845, 849, 104 Ill.Dec. 78, 502 N.E.2d 341, 344 (1986). The "manner of hiring" similarly

shows that Wilhite was subject to Illinois Power's control. Illinois Power decided how many NAES workers it would employ, which workers were eligible for employment, the duration of their services, etc. NAES was, in the words of its former Clinton Power Station site manager, in the business of "loan[ing] employees to other employers to do the work of the other employer." *See* Aff. of Langon Evans, ¶ 3 (d/e 33). NAES employed people its employees actually labored for other companies like Illinois Power. Thus, the evidence clearly shows that Illinois Power determined the "manner of hiring" for persons working at its Clinton Power Station. This factor, like the ones discussed previously, leads to the overwhelming conclusion that Wilhite was a "borrowed" employee.

## B. Contract of Hire

■■■ An employee's express or implied consent is essential to a "borrowed" or "loaned" employee relationship. *See Russell,* 953 F.2d at 332, citing *A.J. Johnson Paving Co.,* 45 Ill.Dec. at 131, 412 N.E.2d at 481–82. A "[p]laintiff's consent to the employer-employee relationship is shown from his acceptance of [defendant's] control and direction as to his work activities." *See Evans,* 104 Ill.Dec. at 81, 502 N.E.2d at 344. Although Wilhite was technically employed by NAES, he knew that his work was to be performed for Illinois Power and that he would be subject to Illinois Power's authority. This finding is evidenced by the admissions of Wilhite which are detailed in the Order's previous section.

By accepting Illinois Power's conditions of employment when he went to work at the Clinton Power Station, Wilhite impliedly consented to being a "borrowed" employee. *See A.J. Johnson Paving Co.,* 45 Ill.Dec. at 131, 412 N.E.2d at 482. Thus,

his claim against Illinois Power must be limited to the recoveries allowed by Illinois' Workers' Compensation Act. *See Belluomini,* 64 F.3d at 302.

## 2. Supplemental Jurisdiction

Once a court determines that a plaintiff cannot avoid summary judgment on his federal claims, it "may decline to exercise supplemental jurisdiction" over her pendent state law claims. 28 U.S.C. § 1367(c)(3). Moreover, "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *See Wright v. Associated Insurance Cos., Inc.,* 29 F.3d 1244, 1251 (7th Cir.1994). For this reason, the Court declines to exercise supplemental jurisdiction over the Wilhites' State law claims.

*Ergo,* Defendant's Motion for Summary Judgment is ALLOWED. The Court declines to exercise supplemental jurisdiction over any claims based on Illinois law. All pending motions are DENIED AS MOOT.