In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-4143

PATRICIA A. LUNA,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 1329—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED SEPTEMBER 20, 2005—DECIDED JULY 17, 2006

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Patricia Luna injured herself at the Great Lakes Naval Base, where she worked as an instructor under a contract between the Navy and a private contractor. She sued the United States under the Federal Tort Claims Act ("FTCA"), which provides a remedy for personal injuries caused by negligent acts of governmental employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1). Under the FTCA the federal government is liable to the same extent that a private individual would be under the law of the state where the negligent act occurred—in this case, Illinois. *See* 28 U.S.C. § 2674. The Illinois Workers' Compensation Act ("IWCA") provides the exclusive recovery against employers and "borrowing

employers" for workers injured in the course of their employment. The Navy is not Luna's employer; the question in this case is whether the Navy is a "borrowing employer" for purposes of the IWCA. We hold that it is, and on this basis affirm the judgment in favor of the United States.

## I. Background

Patricia Luna was addressing a large group of Navy recruits at the seamanship school at the Great Lakes Naval Base in northeastern Illinois when she fell and injured her knee. The auditorium-like room where she was injured was designed to simulate the deck of a ship docked at a pier. Part of the floor was painted gray to resemble the deck of a ship; the rest was painted blue to simulate the water surrounding the ship. At the edge of the ship's "deck" was a three-foot drop-off to the "water" below. About 200 recruits were seated on the floor of this training area to hear Luna's presentation. Luna positioned herself near the drop-off at the edge of the "deck" and began instructing the recruits. A few minutes into her remarks she stepped backward and fell off the unprotected edge of the "deck" onto the blue-painted concrete floor below. She sustained a torn meniscus in her knee and recovered $20,706.40 in workers' compensation benefits under the IWCA. She then sued the United States under the FTCA, alleging that the Navy was negligent because it did not put up a barrier to prevent her fall off the simulated ship's "deck."

Luna was not employed by the Navy; she worked for a company called Resource Consultants, Inc. ("RCI"), which is in the business of supplying employees to governmental agencies. Luna was assigned to the Great Lakes Naval Base as part of a team of employees RCI provided to the Navy under a five-year contract. The contract provided that the Navy would pay RCI a fixed rate for the employees to perform certain work at the base, and RCI

was responsible for paying the employees' wages and providing workers' compensation coverage.

The United States sought summary judgment, arguing that it was a "borrowing employer" under the IWCA and was entitled to immunity from suit by operation of the IWCA's exclusivity provisions. The government cited *Belluomini v. United States*, 64 F.3d 299 (7th Cir. 1995), a decision of this court that identified two tests derived from Illinois Supreme Court case law for determining whether an employer is a borrowing employer under the IWCA. The first test, based on the language of the IWCA defining a "loaning employer," looks to the relationship between the employers. If the employer supplying the employee meets the statutory definition of a loaning employer, then the employer on the other end of the relationship—the one receiving the services of the employee—is deemed a borrowing employer. *Id.* at 302. The second test, which the parties here have dubbed the "control test," focuses on the "extent of control which the alleged borrowing employer has over the employee and inquires as to whether a contract existed between the employee and the borrowing employer." *Id.* The United States maintained that RCI met the statutory definition of a loaning employer, and the Navy was thus a borrowing employer under the first of the tests identified in *Belluomini*.

The district court rejected the government's argument. The court concluded that *Belluomini* had incorrectly assumed "that if an entity qualified as a 'loaning employer' under [the IWCA,] then the entity to which it 'loaned' an employee automatically became a 'borrowing employer.'" The judge thought *Belluomini*'s articulation of this "statutory test" was flawed based on two subsequent opinions from the Illinois court of appeals. Concluding that issues of fact remained as to whether the "control test" was satisfied, the district court denied the government's motion for summary judgment.

The case proceeded to a bench trial, and the court issued a written decision holding that the government failed to satisfy the control test for a borrowing employer under the IWCA. The court nevertheless entered judgment for the United States, concluding that the Navy was not negligent and Luna's injury was the result of her own carelessness. Luna appeals, arguing that the district court erred in finding her solely responsible for her injury and also challenging certain evidentiary rulings. We need not reach these arguments, however. The United States defends its judgment on appeal by reiterating its claim that the Navy was a borrowing employer for purposes of the IWCA, and we agree.

## II.  Discussion

The FTCA is a limited waiver of the United States' sovereign immunity. *Warrum v. United States*, 427 F.3d 1048, 1049-50 (7th Cir. 2005). It exposes the United States to liability for personal injuries as a result of its negligence to the same extent that a private person would be liable under the law of the place where the negligence occurred. *See* 28 U.S.C. § 1346(b)(1). In Illinois, where the Navy's alleged negligence occurred, the IWCA is the exclusive remedy for workers injured on the job; covered employers cannot be sued for accidental workplace injuries. Under workers' compensation statutes, employers are relieved of the risk of large damages verdicts in tort lawsuits arising from accidental workplace injuries, and employees receive the benefit of no-fault recovery. *See Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225 (Ill. 1990).

The IWCA applies to employers who "borrow" workers from another employer:

> Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compen-

sable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorneys' fees and expenses in any hearings before the Illinois Workers' Compensation Commission or in any action to secure such reimbursement.

820 ILL. COMP. STAT. 305/1(a)4; *Belluomini*, 64 F.3d at 302. A loaning employer is thus jointly and severally liable for workers' compensation benefits with the borrowing employer. Absent a contrary agreement between the employers, the loaning employer is entitled to reimbursement from the borrowing employer for workers' compensation payments made to a worker injured while on the job. Loaning and borrowing employers share immunity from tort liability under the IWCA. *Belluomini*, 64 F.3d at 302; *O'Loughlin v. ServiceMaster Co. Ltd. P'ship*, 576 N.E.2d 196, 201 (Ill. 1991); *Saldana v. Wirtz Cartage Co.*, 385 N.E.2d 664, 668 (Ill. 1978).

The IWCA does not define "borrowing employer." It does, however, define "loaning employer":

An Employer whose business or enterprise or a substantial part thereof consists of hiring, procuring or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages

notwithstanding that they are doing the work of such
other employers shall be deemed a loaning employer
within the meaning and provisions of this Section.

820 ILL. COMP. STAT. 305/1(a)4. Based on an Illinois Su-
preme Court case, *Chicago's Finest Workers Co. v. Indus-
trial Commission,* 335 N.E.2d 434, 436 (Ill. 1975), this court
in *Belluomini* extrapolated from this definition the elements
of a statutory test for a borrowed employment relationship.
*Belluomini,* 64 F.3d at 302. It is this aspect of *Belluomini*
that the district court questioned. It should not have done
so.

We note as a preliminary matter that the parties agree
that an employer may be a borrowing employer under the
IWCA if it has "control" of a loaned employee—a test
measured by a variety of factors[1] we need not consider here
because the United States now concedes it cannot satisfy
this so-called "control test" on the facts of this case. The
question for us is whether Illinois law recognizes a statu-
tory test under the IWCA for borrowing employers and
whether the Navy satisfies that test.

The Navy characterizes this as a question of subject-
matter jurisdiction. It is not. The district court had subject-
matter jurisdiction because Luna brought her claim under
the FTCA, which is to say she presented the district court
with a federal question. *See* 28 U.S.C. § 1331. Whether the
Navy is a borrowing employer under the IWCA is a question
about the merits of this case—the extent to which a private
individual would be liable under Illinois law. If the Navy
prevails on this point, it simply means Luna has no claim

---

[1] For a discussion of the factors included in the "control test," *see,
e.g., A.J. Johnson Paving Co. v. Indus. Comm'n,* 412 N.E.2d 477,
480-81 (Ill. 1980); *Chaney v. Yetter Mfg. Co.,* 734 N.E.2d 1028,
1031 (Ill. App. Ct. 2000); *Crespo v. Weber Stephen Prods. Co.,*
656 N.E.2d 154, 156 (Ill. App. Ct. 1995).

under the FTCA, not that the district court had no authority to determine whether she has a claim.

Luna argues that the United States waived its "jurisdictional" argument because it did not file a cross-appeal from the district court's ruling on whether it was a borrowing employer. That argument is wrong on two fronts. First, if this were truly an argument about subject-matter jurisdiction (which it is not), then it could not be waived. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1244 (2006). Second, the United States had no reason to file a cross-appeal because the judgment is entirely in its favor. *Byron v. Clay*, 867 F.2d 1049, 1050 (7th Cir. 1989). Parties in litigation may suffer setbacks along the road to favorable judgments. Appeals are taken to reverse judgments, not intermediate setbacks. The United States is entitled to defend the judgment in its favor on any ground supported by the record without filing a cross-appeal specifically attacking the district court's denial of its motion for summary judgment. *Id.* We can affirm a judgment on any ground fairly supported by the record. *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

We return now to the question before us—whether the Navy was a borrowing employer under the IWCA. The answer is controlled by *Belluomini*, which held that the IWCA's definition of "loaning employer" established a statutory test for a borrowed employment relationship. If an employer supplies an employee to another employer and otherwise meets the statutory definition of a loaning employer, then the receiving employer is deemed a borrowing employer. *Belluomini*, 64 F.3d at 302. The district court thought this aspect of *Belluomini* was premised on improper assumptive legal work. We disagree. *Belluomini* expressly relied on *Chicago's Finest Workers*, the only case from the state's highest court that addresses this issue. *Chicago's Finest Workers* applied the statutory definition of loaning employer and held that "[t]he evidence establishes without

contradiction that under this section of the [IWCA] Chicago's Finest was a loaning employer and [the receiving employer] was the borrowing employer." *Chicago's Finest Workers*, 335 N.E.2d at 436-37.

The district court was concerned that later rulings by the intermediate Illinois appellate court had undermined *Belluomini*. Indeed, several decisions of the Illinois court of appeals have determined that there is no statutory test for a borrowing employer under the IWCA and that the issue of borrowed employment is a question of fact to be resolved solely by application of the multi-factor "control test." *See, e.g.*, *Lanphier v. Gilster-Mary Lee Corp.*, 765 N.E.2d 493, 496 (Ill. App. Ct. 2002); *Chaney v. Yetter Mfg. Co.*, 734 N.E.2d 1028, 1032 (Ill. App. Ct. 2000); *Crespo v. Weber Stephen Prods. Co.*, 656 N.E.2d 154, 156-57 (Ill. App. Ct. 1995). These courts concluded that the statutory definition of a loaning employer was not intended to establish a corresponding test for borrowing employers. *Lanphier*, 765 N.E.2d at 495-96; *Chaney*, 734 N.E.2d at 1032; *Crespo*, 656 N.E.2d at 157. None of these cases, however, mention the Illinois Supreme Court's decision in *Chicago's Finest Workers*. The district judge nevertheless determined that she could "safely predict" that the Illinois Supreme Court would agree there is no statutory test for a borrowing employer.

That prediction was error for two reasons. First, the Illinois Supreme Court has already spoken on the matter, as this court specifically noted in *Belluomini*; it held in *Chicago's Finest Workers* that if the employer supplying an employee satisfies the statutory definition of a loaning employer, then the receiving employer is a borrowing employer within the meaning of the IWCA. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("Once the state's highest court acts, the need for prediction is past."). Second, even if *Belluomini* misread *Chicago's Finest Workers*, the district court should not be

making contrary predictions when this court has ruled squarely on the matter. Ours is a hierarchical system. *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir. 1993). If a district court concludes that the intermediate state appellate courts have correctly answered a question this court botched, it should "report [its] conclusions while applying the existing law of the circuit." *Id.*; *see also Reiser*, 380 F.3d at 1029 ("[D]ecisions of intermediate state courts . . . do not themselves liberate district judges from the force of our decisions.").

We are satisfied that *Belluomini* correctly decided the matter. For one thing, the Illinois Supreme Court has neither overruled *Chicago's Finest Workers* nor revisited the issue in a way that suggests our reading of that case is wrong. In addition, it is clear from the face of the IWCA that loaning and borrowing employers go hand in hand. The Act defines only loaning employers, 820 ILL. COMP. STAT. 305/1(a)4, but there is no need to define borrowing employers because the connection is plain—if one employer lends an employee and meets the statutory definition for a loaning employer, the recipient employer is borrowing the employee for purposes of the IWCA. The Act itself discusses joint and several liability using the term "loaning employer" as a necessary predicate to a "borrowing employer."

To establish that RCI was a loaning employer as defined by the IWCA, the United States must show (1) a substantial part of RCI's business is hiring, procuring, or furnishing employees to do the work of other employers; (2) RCI pays the employees' wages even though they are working for others; and (3) the Navy is operating under the IWCA. 820 ILL. COMP. STAT. 305/1(a)4; *Belluomini*, 64 F.3d at 302. RCI easily satisfies the test for a loaning employer. It is undisputed that a substantial part of its business involved hiring, procuring, or furnishing employees to do jobs for governmental and private agencies. In fact, during more than

eighteen years as a governmental contractor, RCI drew over 90% of its revenues from contracts like the one with the Navy in this case. In addition, RCI was responsible for paying Luna's wages even though she performed tasks for the Navy. Finally, the Navy operated under the IWCA. For purposes of the FTCA, the Navy is considered to be operating under the IWCA if a private entity under similar circumstances would be found to be operating under the IWCA. 28 U.S.C. § 1346(b); *Belluomini*, 64 F.3d at 303. An employer in Illinois may, if it is not already obligated to provide workers' compensation insurance for its workers, elect to be bound by the IWCA. 820 ILL. COMP. STAT. 305/2. Here, the Navy required RCI to provide workers' compensation coverage for the employees it loaned the Navy under the contract. In *Belluomini* we commented that a similar contractual provision was the functional equivalent of an election by the government to provide such coverage itself. 64 F.3d at 303. That is a sensible inference and we find the same to be true here.

Because RCI was a loaning employer as defined by the IWCA, the Navy was a borrowing employer protected from tort suits for accidental injuries to workers on the job. The judgment of the district court in favor of the Navy is AFFIRMED.

No. 04-4143 11

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*